## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| JOHN DOE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| EMORY UNIVERSITY, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| | ) |
| | ) |

## COMPLAINT

Plaintiff John Doe ("Doe"), by and through his undersigned attorneys, complains as follows against Defendant Emory University ("Emory"):

### INTRODUCTION

1.     In this action, Doe challenges Emory's decision to suspend him based on his involvement with Eightball, an innovative artificial intelligence-based learning tool.

2.     In the spring of 2023, Doe and his friend—referred to here as "Emory Student 1"—presented Eightball to Emory students, faculty, and alumni at the university's annual student entrepreneurial business pitch competition ("Pitch the

Summit" competition), and Emory awarded Eightball the $10,000 grand prize. Ex. A, Doe Declaration ("Doe Decl.") ¶¶ 18-23.

3.      While nothing about Eightball changed, Emory's view of Eightball changed dramatically.  Approximately six months after Emory celebrated and funded Eightball's development, Emory's Honor Council concluded that Eightball was offensive to Emory's community standards because Eightball—like a calculator, search engines like Google, and so many other technological tools—"*could* be used for cheating."  Doe Decl. ¶ 47, Ex. 13 at 7.  To be clear, Doe never cheated, and Emory never alleged that he did.  In fact, Emory concedes that there is *no evidence* that *anyone* has *ever* used Eightball to cheat.  And to this day Emory advertises Eightball as an example of student innovation and entrepreneurship.  Doe Decl. ¶ 5, Ex. 1 at 2.[1]

4.      In concluding that Doe violated the Honor Code, Emory failed to abide by its established procedures and standards, intentionally breaching its contract with Doe as a university student.  Emory's farcical proceeding and subsequent discipline, if permitted to stand, will unfairly cause Doe to miss a semester of his senior year of college, prevent him from writing an honors thesis, delay his graduation, inhibit his postgraduate educational and career opportunities, and permanently tarnish his reputation.

---

[1] Numbered exhibits refer to the exhibits to John Doe's Declaration (Exhibit A).

5.     Accordingly, Doe seeks damages and an injunction vacating Emory's suspension and other disciplinary measures.

## PARTIES

6.     Doe is a citizen of Massachusetts and resides in Lexington, Massachusetts.  Doe Decl. ¶ 2.

7.     Emory is a corporation organized pursuant to the Georgia Nonprofit Corporation Code, O.C.G.A. Section 14-3-101, *et seq.*  Emory's registered office is located at 201 Dowman Drive, 312 Administration Building, Atlanta, Georgia 30322 in DeKalb County.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction because the parties are citizens of different states and the amount in controversy exceeds $75,000.  *See* 28 U.S.C. § 1332.

9.     This Court has personal jurisdiction over Emory because Emory is incorporated in Georgia, located in Atlanta, Georgia, and a substantial part of the events giving rise to this suit occurred in Atlanta, Georgia.

10.    Venue is proper in this district because Emory is located in Atlanta, Georgia in DeKalb County, which is within the Northern District of Georgia, Atlanta Division, and because a substantial part of the events giving rise to this suit occurred there.  *See* 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

### *Emory Student 1 Develops Eightball*

11.    Doe is a junior at Emory University, majoring in history and minoring in economics.  He is a top student, the treasurer of the school's Judo Club, and a regular participant in campus community activities.  Doe Decl. ¶ 3.

12.    Before the events giving rise to this action, Doe had never even been accused of misconduct, academic or otherwise.  Doe Decl. ¶ 4.

13.    In May 2022, Emory President Gregory L. Fenves publicly encouraged Emory students to innovate with artificial intelligence: "Emory faculty and students have the multidisciplinary expertise needed to develop creative and thoughtful innovations so that AI can be a force for good — improving our world and the human experience."  Doe Decl. ¶ 6, Ex. 2 at 2.

14.    Emory Student 1, during the winter break after the fall 2022 semester, wrote the first iteration of code for Eightball—an online learning tool that uses artificial intelligence to streamline the process for making classroom aids like flashcards, study guides, and worksheets.  Doe Decl. ¶ 7.

15.    By Emory Student 1's design, students could upload class materials, such as notes and lecture slides, to Eightball's private server (similar to Google Drive or other frequently used, third-party sites) and then ask Eightball to generate requested learning materials.  Doe Decl. ¶ 8.

16.    Information that one student submits into Eightball is not made available to others.  Doe Decl. ¶ 9.

17.    In January 2023, Emory Student 1 approached Doe about turning Eightball into a business.  Doe Decl. ¶ 10.

18.    Because Doe does not know how to code or develop software, he decided to support Eightball in a strictly marketing-focused role.  Doe Decl. ¶ 11.

19.    Doe and others began marketing Eightball at Emory during the spring 2023 semester.  Doe made a few posts about Eightball on social media.  Doe Decl. ¶ 12.

20.    Eightball's website was public and available to Emory faculty and administrators to view and try for themselves.  Doe Decl. ¶ 13.

***Emory Endorses Eightball***

21.    Emory at all relevant times not only was aware of Eightball, but also celebrated the product and encouraged Emory Student 1 and Doe to develop Eightball's capabilities.

22.    On March 1, 2023, Emory's student newspaper, the Emory Wheel, ran an article about Eightball titled "Emory student entrepreneurs use AI to improve students' studying experience."  Doe Decl. ¶ 14, Ex. 3.  The article explained that Eightball allowed students "to upload materials including lecture slides [and] automatically spit out flashcards based on the uploaded material."  Doe Decl. ¶ 14,

Ex. 3 at 2.  The article also discussed Eightball's plan to release a "homework helper" feature that specifically "***does not promote mindless cheating, like homework solver platforms***," but rather "is going to help you genuinely learn your material." *Id.* (emphasis added).

23.    On March 10, 2023, Emory Professor Anna Errore wrote to the Eightball team: "I was very pleased to hear about your startup, [E]ightball.  I congratulate you for your entrepreneurial attitude and for the very interesting idea that you and your business partners had."  Doe Decl. ¶ 15, Ex. 4.

24.    Around that time, Professor Errore demonstrated Eightball in her lectures and encouraged her students to try it. Doe Decl. ¶ 16.

25.    At least one other professor and ten teaching assistants collaborated with Eightball to help develop the technology. Doe Decl. ¶ 17.

26.    Later in March 2023, Doe and Emory Student 1 entered Eightball into Emory's Pitch the Summit competition.  Doe Decl. ¶ 18.  The competition's objective is to provide Emory undergraduate and graduate students with the opportunity to learn how to effectively pitch an idea for a new venture.  Doe Decl. ¶ 19, Ex. 5 at 1.  Participating individuals or teams have the opportunity to present their entrepreneurial idea to panels of judges, with the most successful pitches advancing through three rounds of competition.  Doe Decl. ¶ 19, Ex. 5 at 1.  The panel of judges is comprised of Emory alumni and graduate students at Emory's

Goizueta Business School.  Doe Decl. ¶ 23.  Winning individuals and teams receive guidance, financial support, and in-kind contributions to move their ventures forward.  Doe Decl. ¶ 19, Ex. 5 at 1.

27.    Doe and Emory Student 1 presented Eightball at Emory's Pitch the Summit competition.  Doe Decl. ¶¶ 20-21, Ex. 6 at 2-11.  They discussed Eightball's immediate success and a plan to introduce an "Eightball Assignment" feature that would include a "Check your Answer" function.  Doe Decl. ¶ 21, Ex. 6 at 7.

28.    The presentation referenced Quizlet and Chegg, two other companies that offer learning supplements, for the limited purpose of stating that Eightball would mimic their proven pricing model.  Doe Decl. ¶ 21, Ex. 6 at 9.

29.    Doe and Emory Student 1 also forecast to the judges that they intended to establish a mechanism that would allow students to link Eightball to Canvas, Emory's learning management platform on which Emory professors host course materials.  Doe Decl. ¶ 22.  By connecting Eightball to Canvas, students would be able to import their course materials to Eightball all at once rather than uploading the same documents individually.  Doe Decl. ¶ 22.

30.    The panel of judges, all members of the Emory community, awarded Eightball the grand prize of $10,000, paid by Emory itself, to fund Eightball's continued progress.  Doe Decl. ¶ 23.

31.     Following the competition, Andrea Hershatter, Associate Professor and Senior Associate Dean of the Bachelor of Business Administration Program in Emory's Goizueta Business School, connected Doe and Emory Student 1 to an Emory alumnus—a seasoned entrepreneur who took interest in Eightball's potential. Doe Decl. ¶ 24, Ex. 6 at 16.

32.     On June 28, 2023, Emory ran an article titled "Dorm Room Entrepreneur: BBA Student Co-Founds AI-Powered Study Tool Eightball."  Doe Decl. ¶ 25, Ex. 7.  The article features Eightball and its win at the Pitch the Summit competition.  *Id.*  In that article, another Eightball representative explained that Eightball's mission is "to be an indispensable tool powered by AI that empowers and helps students study—***not do their homework or be a cheat sheet***."  *Id.* at 2 (emphasis added).

33.     On October 4, 2023, Emory Associate Professor Jinho Choi told Doe that Eightball "looks great."  Doe Decl. ¶ 26, Ex. 8.

34.     On November 2, 2023, Doe advertised directly to students in Emory's PSYC 110 course, stating, "Students in your 'Introduction to Psychology 1: Psychobiology and Cognition' class are using Eightball for their homework assignments and studying."  Doe Decl. ¶ 27, Ex. 9.  Doe sent similar promotional materials to students in other Emory courses as well.  The email recipients, therefore,

were fully aware of Eightball, and yet none of them ever raised any concern with respect to students using the tool to support their learning processes. *Id.*

35.    In fact, at no time up to this point did Emory faculty, administrators, alumni, or students raise any concern that Eightball could be used to cheat. Doe Decl. ¶ 28.

***Emory Student 1 Links Eightball to Canvas***

36.    In approximately October 2023, Emory Student 1 successfully developed a means by which students could opt to link Eightball to their Canvas accounts, as forecast during the Pitch the Summit competition. Doe Decl. ¶ 29. The mechanism allowed users to submit their Canvas tokens to the Eightball platform, streamlining the process by which students were able to upload materials to Eightball. *Id.* The upgrade did not change what students could upload to Eightball or what learning materials Eightball could produce upon request. *Id*.

37.    When some students linked their Canvas accounts to Eightball, Emory's Office of Academic Technology Services ("ATS") and Office of Library & Information Technology Services ("LITS") became aware that a third-party application (most likely Eightball) was accessing user tokens. Doe Decl. ¶ 30.

38.    Apparently in response, Emory hid the button that generates Canvas tokens, but it did not inform Emory Student 1 or Doe that the change was in response

to Eightball's newly available method for uploading course materials.  Doe Decl. ¶ 31.

39.    Without any knowledge or reason to suspect that the change to Canvas was in response to Eightball, Emory Student 1 developed a workaround so users could continue linking their Canvas portfolios to Eightball, reducing the amount of time otherwise needed to upload the same documents one by one. Doe Decl. ¶ 32.

40.    Doe did not know at the time how Emory Student 1 linked Eightball to Canvas, but the workaround apparently involved publicly disclosing one student Canvas token.  Doe Decl. ¶ 33.

41.    Only a handful of Emory students ever actually linked their Canvas accounts to Eightball.  Doe Decl. ¶ 34.

**Emory's Honor Code**

42.    Emory has both an Undergraduate Academics Honor Code ("Honor Code") (Ex. 10) and an Undergraduate Code of Conduct ("Code of Conduct") that govern Emory undergraduate students' behavior.  Doe Decl. ¶ 35.

43.    As a condition of Doe's acceptance and attendance at Emory, Emory and Doe agreed to be bound by the terms of the Honor Code.  Doe Decl. ¶ 36.

44.    The Honor Code requires all undergraduate students to take the Honor Pledge: "I pledge to abide by the Emory Honor Code in all academic work and avoid

any action that would provide an unfair advantage." Doe Decl. ¶ 36, Ex. 10 at Honor Code § II.

45.   Emory further required Doe to accept the Honor Code in his mandatory freshman year Emory Edge class. Doe Decl. ¶ 36.

46.   Under the Honor Code, students may use artificial intelligence programs in completing coursework as long as they provide proper citations, unless the course's professor instructs otherwise. Doe Decl. ¶ 36, Ex. 10 at App'x § IV.

47.   The Honor Code defines Academic Misconduct as "any action or inaction that is offensive to the integrity and honesty of the members of the academic community," including cheating and "[i]ntentionally helping or attempting to help another person to violate any provision of this Honor Code." Doe Decl. ¶ 36, Ex. 10 at Procedures of the Honor Code § V.

48.   The Honor Code establishes procedures for resolving a reported violation:

> An investigative team meets with the reporting faculty, any witnesses, and the reported student to gather information and evidence related to the case. At the conclusion of the investigation, the investigative team may recommend to the dean that the case be dismissed, or the investigative team may refer the case to the Honor Council for a full hearing. At a hearing, a panel of at least five members reviews evidence and hears statements from all parties, in accordance with the procedures set forth below. The panel then votes to determine whether the reported student is responsible for the violation, and if so, the panel recommends sanctions to the dean.

Doe Decl. ¶ 36, Ex. 10 at Procedures of the Honor Code § IV.

49.     It also establishes the evidentiary burden to find a student responsible for an Honor Code violation:

> For a finding of an Honor Code violation, the Honor Council must determine by a unanimous vote of the hearing board that there is clear and convincing evidence of a violation. "Clear and convincing" evidence means that a particular fact or set of facts is substantially more likely to be true than not to be true.

Doe Decl. ¶ 36, Ex. 10 at Procedures of the Honor Code § V(G).

50.     After an Honor Council hearing, the Honor Council makes a recommendation to the dean who may impose a sanction:

> After any Honor Council informal resolution meeting, full hearing, or administrative hearing, the Honor Council will promptly prepare a summary of the hearing or meeting. This summary will report information that the Honor Council considered in reaching its findings and will be submitted to the dean with the accompanying recommendation and all evidence considered by the Honor Council.

> The dean may impose the recommended sanction or sanctions of greater or lesser severity. Absent extenuating circumstances, the dean must notify the student in writing of the decision within ten business days.

Doe Decl. ¶ 36, Ex. 10 at Procedures of the Honor Code § V(H).

51.     Students found responsible for violating the Honor Code may appeal the finding and sanction to an Appeal Panel.  The Appeal Panel makes a recommendation to a dean who decides on a final finding of responsibility and any discipline.  Doe Decl. ¶ 36, Ex. 10 at Procedures of the Honor Code § VII.

*Emory Accuses Doe of Violating the Honor Code*

52.    On October 31, 2023, Emory informed Emory Student 1 that he may have violated Emory's Undergraduate Code of Conduct by connecting Eightball to Canvas.  Doe Decl. ¶ 37.  Emory did not provide such notice to Doe at that time.  *Id*.

53.    On November 3, 2023, without any prior warning, Emory informed Doe that it was considering five potential Honor Code violations "related to the development of a generative AI tool that potentially exposes Canvas data to a third party and may be used by students to complete assignments in violation of the Undergraduate Academic Honor Code":

> a. Violating Community Standards: Committing any action or inaction which is offensive to the integrity and honesty of the members of the academic community;
>
> b. Violating Community Standards: Intentionally helping or attempting to help another person to violate any provision of this Honor Code or the academic integrity policy at another educational institution;
>
> c. Violating Community Standards: Disseminating any course materials, including recordings of the class, without the permission of the instructor;
>
> d. Cheating: Seeking, using, giving, or obtaining unauthorized assistance or information in any academic assignment or examination (see Appendix IV: On the Use of Artificial Intelligence for Assignments); and
>
> e. Plagiarizing: Plagiarizing, whether intentionally or unintentionally, in any assignment (see Appendix IV: On the Use of Artificial Intelligence for Assignments).

Doe Decl. ¶ 38, Ex. 11.

54.    At the time Doe received the November 3, 2023 letter, Emory did not disclose who originally reported a potential Honor Code violation.  Doe Decl. ¶ 39.

55.    On November 13, 2023, Emory's Office of Student Conduct sent notice to Doe of a potential violation of the Undergraduate Code of Conduct based on a report from ATS that Eightball's connection to Canvas may have violated Emory's IT policies.  Doe Decl. ¶ 40, Ex. 12.

56.    Upon receiving the notices of potential Honor Code and Code of Conduct violations, Doe immediately asked Emory Student 1 to shut down Eightball at Emory.  Doe Decl. ¶ 41.

57.    Doe needed Emory Student 1 to stop running Eightball because Doe lacked the authorizations or technical know-how to do it himself.  Doe Decl. ¶ 42. And, in general, Doe does not know how to code, and he was not involved in the operation and management of Eightball's website.  *Id.*

58.    Emory Student 1 did in fact shut down Eightball at Emory.  Doe Decl. ¶ 43.

59.    Soon thereafter, Doe met with the Office of Student Conduct regarding the potential Code of Conduct violation.  Doe Decl. ¶ 44.  As a result of that meeting, Doe, despite his lack of involvement with Eightball's software, accepted responsibility for his role in the potential IT violation, was put on disciplinary

probation for one semester, and submitted a formal written apology and an academic paper on policy considerations for start-up companies utilizing novel technologies. *Id.* The Office of Student Conduct considered the matter closed. *Id.*

60.     Even so, the Honor Council proceeded with its own investigations. Doe Decl. ¶ 45.

61.     During the investigation and before the hearing, Senior Associate Director of the Honor Council Blaire Wilson and Investigating Honor Council Faculty Member Dr. Levi Morran informed Doe that Emory's prior endorsement and funding of Eightball would weigh heavily in the Honor Council's consideration of the alleged violation. Doe Decl. ¶ 46.

62.     The Honor Council held a hearing on January 18, 2024. Doe Decl. ¶ 47, Ex. 13 at 1.

63.     At that hearing, the Honor Council, comprised of a Spanish professor and four undergraduate students, heard from only two witnesses in addition to Doe and Emory Student 1. Doe Decl. ¶ 47, Ex. 13.

64.     First, Emory ATS employee Kim Braxton testified about the link between Eightball and Canvas. Doe Decl. ¶ 47, Ex. 13 at 2-3. She said that the "major difference" between Eightball from the Pitch the Summit competition and Eightball at the time of the hearing was the capability for students to integrate their Canvas accounts (a feature which Doe and Emory Student 1 in fact discussed at the

competition).  *Id.* She did not offer any opinion about whether students could use Eightball to cheat.  *Id.*

65.    Next, Emory LITS employee Anthony Hess offered his thoughts on Eightball.  He too said that the "major concern" was Eightball's use of student credentials to access Canvas.  Doe Decl. ¶ 47, Ex. 13 at 3.  Mr. Hess only addressed the potential for academic misuse at the panel's prompting, at which point he postulated that Eightball might carry the "potential" for cheating.  *Id.*  Mr. Hess, however, as an LITS employee, is not qualified to opine on ways in which students may cheat.

66.    Doe then explained that his role was limited to marketing Eightball and that he was not involved with developing any of its software, including the software coding necessary to link Canvas to Eightball.  Doe Decl. ¶ 47, Ex. 13 at 4.  He added that he never intended Eightball to be used to cheat, and he was surprised that Emory would pay him and Emory Student 1 to develop Eightball and then punish them for doing so—especially when Eightball and its specific features were lauded by Emory at the Pitch the Summit competition.  *Id.*

67.    Finally, Emory Student 1 added that Doe did not contribute to Eightball's software and clarified that any materials that students uploaded to Eightball were not made public.  Doe Decl. ¶ 47, Ex. 13 at 4-5.  He also confirmed that he already had shut down Eightball at Emory.  *Id.* at 5.

68.     None of the witnesses at any point described how Eightball could be used to cheat or presented any evidence that anyone had in fact used Eightball to cheat.  Doe Decl. ¶ 48.

69.     The Honor Council also never asked Doe or Emory Student 1 about the mention of Chegg as a pricing comparator in Eightball's presentation at the Pitch the Summit competition.   Doe Decl. ¶ 49.   The Honor Council did ask about the presentation's reference to a planned "Check your Answer" feature, and Doe explained that it was intended to be a tool to help students review practice problems. *Id.*  The "Check your Answer" feature, however, was never created.  *Id.*

70.     Doe was never asked about his intention in creating Eightball or about other students using Eightball to cheat.  Doe Decl. ¶ 50.

### *Emory Suspends Doe*

71.     After the hearing, the Honor Council found Doe responsible for violating community standards:

> (1) Committing any action or inaction which is offensive to the integrity and honesty of the members of the academic community; (2) intentionally helping or attempting to help another person to violate any provision of this Honor Code or the academic integrity policy at another educational institution; and (3) disseminating any course materials, including recording of the class, without the permission of the instructor.

Doe Decl. ¶ 47, Ex. 13 at 6.

72.    The Honor Council reasoned that "Eightball is based on a blueprint which incorporates the ability to cheat, which means that [Doe and Emory Student 1] were aware of Eightball's capacity and built it with intent."  Doe Decl. ¶ 47, Ex. 13 at 6.

73.    As evidence of Doe's awareness that others could use Eightball to cheat, the Honor Council for the first time cited Eightball's planned pricing model and the never-implemented "Check your Answer" tool, both of which were discussed in Eightball's award-winning slide deck from the Pitch the Summit competition.  Doe Decl. ¶ 47, Ex. 13 at 6-7.

74.    The Honor Council then wrote that the link between Eightball and Canvas, which also was previewed at the competition and merely streamlined the process by which students could upload information, "is essentially a dissemination of user's information" because students were sharing course materials with Eightball.  Doe Decl. ¶ 47, Ex. 13 at 7.  For clarity, Eightball never disseminated information with anyone.  *Id.* ¶¶ 8-9.

75.    The Honor Council recommended that Doe be put on Honor Code probation until graduation, receive a one-year suspension with a permanent record retained by the Honor Council, and complete an educational program.  Doe Decl. ¶ 47, Ex. 13 at 7; ¶ 51.

76.     The Honor Council recommended expelling Emory Student 1, reflecting its view that he was more responsible than Doe for developing Eightball. Doe Decl. ¶ 51.

77.     On review, Associate Dean Jason Ciejka observed that this was Doe's first offense and that a first offense resulting in suspension is "uncommon." Doe Decl. ¶ 52, Ex. 14; ¶ 53, Ex. 15.

78.     Dean Ciejka modified the punishment for Doe to Honor Code probation until graduation, a suspension for the summer and fall 2024 (after which Doe may apply for readmission) with a permanent record retained by the Honor Council, and mandatory completion of an educational program. Doe Decl. ¶ 52, Ex. 14; ¶ 53, Ex. 15. Emory Student 1's discipline was reduced from expulsion to a one-year suspension, again more severe than Doe's. Doe Decl. ¶ 54.

79.     While preparing to appeal the Honor Council's decision, Doe received an email from a representative from Emory Entrepreneurship & Venture Management ("EEVM"). Doe Decl. ¶ 55, Ex. 16. The email asks if the Eightball team would like to connect with EEVM's Excellerator program, which was looking to provide grants to student-led businesses. *Id.*

80.     Doe filed a timely appeal on February 20, 2024 on the grounds that (1) the Honor Council did not administer its procedures according to its published policies, and it is likely these errors could have substantially altered the decision of

the Honor Council, and (2) the sanctions were disproportionate to the circumstances of the violation.  Doe Decl. ¶ 56, Ex. 17.

81.   Specifically, Doe argued that "[t]he Honor Council Failed to Apply the Clear and Convincing Evidence Standard of Proof, as Required by the Honor Code" because, among other reasons, "the evidence presented at the hearing proved overwhelmingly that the Emory University Community . . . has, from the outset, celebrated, encouraged, and funded the development of Eightball," and it did not prove that Doe intended to facilitate cheating or disseminated course materials without the faculty's knowledge.  Doe Decl. ¶ 56, Ex. 17 at 6-8.  Doe asserted further that the suspension and other discipline were overly harsh because this was his first offense, and he was already disciplined by the Office of Student Conduct based on Eightball's connection to Canvas.  *Id.* at 12-13.

82.   The Appeal Panel recommended that Senior Associate Dean for Undergraduate Education Joanne Brzinski sustain the finding of responsibility and all of the accompanying discipline, including the one-semester suspension.  Doe Decl. ¶ 57, Ex. 18.

83.   On March 20, 2024, Brzinski informed Doe that she accepted the Appeal Panel's recommendation entirely and affirmed the finding that Doe was responsible and the imposed discipline.  Doe Decl. ¶ 58.  She also told Doe that the Appeal Panel flatly refused to even consider his argument that Eightball could not

have been offensive to Emory's community because Emory had funded Eightball in the first place. *Id.*

84.   Emory never provided Doe with any written record from the Appeal Panel, and Brzinski's written decision does not contain any explanation beyond the perfunctory statement: "I have accepted the panel's recommendation." Doe Decl. ¶ 57, Ex. 18; ¶ 59.

85.   Her letter demonstrates an intent to dissuade Doe from working on Eightball in the future: "[Doe], I trust that you have gained from these events a better understanding of the importance of academic integrity to an Emory education." Doe Decl. ¶ 57, Ex. 18.

86.   Emory Student 1, for his part, also appealed the suspension, and Emory reduced his suspension from one year to one semester, the same as Doe. Doe Decl. ¶ 60.

87.   Doe has exhausted his administrative remedies within Emory. Doe Decl. ¶ 61.

### *Doe Faces Permanent and Irreparable Harm*

88.   The suspension, if it stands, will prevent Doe from participating in the honor's thesis program to which he was already accepted, denying him his earned opportunities to develop essential research and writing skills and to add an important accomplishment to his resume. Doe Decl. ¶ 62.

89.    The suspension also would prevent Doe from registering for and attending classes with his close friends and graduating class during the fall semester of his senior year of college, which is an experience that he cannot replicate.  Doe Decl. ¶ 63.

90.    Furthermore, if the suspension is carried out, Doe will not be able to graduate on time and with his class, delaying the start of his career.  Doe Decl. ¶ 64.

91.    Doe has spent the past three years building relationships with his fellow classmates, and a suspension would eliminate a significant portion of his final time with them.  This is especially damaging to Doe who, reasonably assuming he would be able to spend his final year with his classmates, decided to study abroad during the spring semester of his junior year.  Doe Decl. ¶ 65.

92.    Doe also intends to apply to law school and search for a job between graduating college and attending law school.  The Honor Code violation and discipline damage Doe's postgraduate education and career prospects because prospective employers, graduate schools, and state bars are more likely to deny Doe opportunities that he would otherwise have based on this finding.  Doe Decl. ¶ 66. Doe will also be unable to participate in law school recruiting events and job fairs in the fall.  *Id.*

93.    Emory's conclusion that Doe breached the Honor Code and resulting discipline will forever cast undeserved doubt on Doe's integrity.  Doe Decl. ¶ 67.

## COUNT I
## BREACH OF CONTRACT

94.     Doe incorporates and re-alleges each of the preceding paragraphs as if fully restated and set forth here.

95.     Doe as a student and Emory as a university were under a contract.

96.     Their contract required both Doe and Emory to adhere to the Honor Code.

97.     Emory is thus contractually obligated to apply the Honor Code's procedures when considering any reported potential Honor Code violations.

98.     Emory breached its contract with Doe because it found him responsible for violating the Honor Code and disciplined him without adhering to the Honor Code's process.  For example:

    a.  Emory failed to apply the clear and convincing evidence standard;

    b.  Emory did not adequately consider Doe's arguments on appeal; and

    c.  Emory imposed an arbitrary and capricious punishment.

99.     Because Emory encouraged Doe to pursue Eightball, including by funding Eightball with the $10,000 grand prize from the Pitch the Summit competition, and Doe reasonably relied on that encouragement, Emory is equitably estopped from punishing Doe on the grounds that his work on Eightball violated its Honor Code.

100.   Emory knowingly and intentionally breached its contract with Doe.  *See* O.C.G.A. § 51-12-10.  Emory willfully and self-servingly deviated from proper Honor Code procedures to make a public example out of Doe.

101.   Doe's losses from Emory's intentional breach of contract include, but are not limited to, the lost opportunity to attend school for half of his senior year with his close friends and graduating class, the lost opportunity to write an honor's thesis, worsened career prospects, diminished future wages, reduced perceived integrity, and the lost opportunity to monetize Eightball going forward.

102.   These damages are the direct, proximate, and foreseeable consequence of Emory's actions.

## COUNT II
## ATTORNEYS' FEES

103.   Doe incorporates and re-alleges each of the preceding paragraphs as if fully restated and set forth here.

104.   Emory has acted in bad faith, has been stubbornly litigious, and has caused Doe unnecessary trouble and expense in all aspects of its handling of Doe's investigation, hearing, appeal, and discipline.  *See* O.C.G.A. § 13-6-11.

105.   Emory refused to consider compelling exculpatory facts and Doe's arguments, including those relating to Emory's consistent support of Eightball, outside of legal proceedings.

**PRAYER FOR RELIEF**

106.   Doe respectfully seeks damages exceeding $75,000 in an amount to be determined at trial.

107.   Doe respectfully seeks a permanent injunction requiring Emory to vacate the finding that Doe violated the Honor Code and the resulting suspension and other discipline.

108.   Doe respectfully seeks his attorneys' fees and expenses incurred as a result of this litigation.

109.   Doe respectfully seeks any other such relief as the Court finds just and proper.

**JURY DEMAND**

Plaintiff demands a jury trial on all counts that may be tried to a jury.

Respectfully submitted,

Dated: May 14, 2024

*/s/ Craig. C. Martin*
Craig C. Martin (*pro hac vice* pending)
John D. Mitchell (*pro hac vice* pending)
Jeremy H. Salinger (*pro hac vice* pending)
Olivia R. Varnado (*pro hac vice* pending)
Nathan Pflaum (*pro hac vice* pending)
WILLKIE FARR & GALLAGHER LLP
300 North LaSalle Street, Suite 5000
Chicago, IL 60654

(312) 728-9000
cmartin@willkie.com
jmitchell@willkie.com
jsalinger@willkie.com
ovarnado@willkie.com
npflaum@willkie.com

Christopher E. Adams
GA Bar No. 789600
Halsey G. Knapp, Jr.
GA Bar No. 425320
Jennifer K. Coalson
GA Bar No. 266989
KREVOLIN & HORST, LLC
1201 W. Peachtree St. NW
Suite 3250
Atlanta, Georgia 30309
(404) 888-9700
adams@khlawfirm.com
hknapp@khlawfirm.com
coalson@khlawfirm.com

Ronald S. Sullivan Jr. (*pro hac vice* pending)
Ronald Sullivan Law PLLC
300 I Street NW
Suite 400E
Washington, DC 20005
(202) 313-8313
rsullivan@ronaldsullivanlaw.com

*Attorneys for Plaintiff*