# EXHIBIT 17

**WILLKIE FARR & GALLAGHER** LLP

**Craig C. Martin**
300 N. LaSalle Dr.
Chicago, IL 60654
Tel: 312 728 9000
Fax: 312 728 9199

February 20, 2024

Honor Council Appeal Panel
Emory University
Office of Undergraduate Education
c/o: Blaire Wilson (blaire.wilson@emory.edu)
Senior Associate Director, Honor Council

**Re: Ben Craver (#        ) – Appeal of Honor Council Decision**

Dear Honor Council Appeal Panel:

      We respectfully submit this letter on behalf of Ben Craver, a student at the Emory University College of Arts and Sciences. Until this appeal, Ben has participated in the University's process without the assistance of counsel. Given the seriousness of the sanction currently imposed upon Ben, we have worked with him closely in the preparation of this appeal so that the facts and circumstances are fully explained in light of the policies and procedures of the University. We request that the Appeal Panel vacate the sanction entirely so that the only punishment Ben receives is that which was imposed upon him as part of the student conduct proceeding—one year academic probation, a formal written apology, and an academic paper. We believe that this punishment fully serves the educational mission of the University in this matter. Alternatively, the panel should remand the matter for another hearing applying the proper evidentiary standard.

      Ben is a honors history major with an A average. Ben has never cheated or previously faced misconduct allegations of any sort. This matter involves the marketing of Eightball, an innovative learning tool that Emory University funded with a $10,000 grand prize from the "Pitch the Summit" contest during the spring of 2023. After winning this award, and receiving substantial support and positive recognition from Emory's faculty, administration, and alumni, Ben was surprised when he faced charges from both the Office of Student Conduct and the Honor Council. Ben represented himself in these proceedings. He accepted responsibility and discipline for the Student Conduct charges relating to the alleged misuse of Emory's computer network. But because Eightball was not created or intended to help students cheat, Ben contested the five alleged Honor Code allegations. The Honor Council nevertheless found Ben responsible for three of the five initially charged violations (two of the five violations were dismissed voluntarily prior to the Honor Council hearing), and recommended consequences including a one-year suspension, which Associate Dean Jason Ciejka subsequently reduced to one semester. Because of the seriousness of these consequences, which will permanently remain on Ben's record and delay and disrupt the progress of his education, we ask the Panel to vacate this sanction entirely. Ben has asked that we work with him to draft this appeal.

Honor Council Appeal Panel
February 20, 2024
Page 2

We respectfully submit that Ben did not violate the Honor Code, and that the Honor Council erred in reaching its conclusions.

**First**, *Eightball is not a cheating tool*. It is a learning tool. Eightball uses artificial intelligence technology to help students prepare their own learning resources from existing course materials. Emory's Honor Code permits students to use AI, and President Fenves has encouraged them to do so: "Emory faculty and students have the multidisciplinary expertise needed to develop creative and thoughtful innovations so that AI can be a force for good—improving our world and the human experience." Ex. 1, *Shaping the Future of Artificial Intelligence to Serve Society: Emory's AI Humanity Initiative*, May 3, 2022, Emory.edu. Eightball is one such learning innovation. It does not facilitate cheating any more than Google, a calculator, or reading glasses that could help a student look at a neighbor's exam. Each *could* be misused to cheat, but their inventors did not create them with the *intention* of being used to cheat. There is no evidence of anyone using Eightball dishonestly. (The Honor Council also found without evidence that Eightball disseminates course materials, which it does not do.) Ben should not be punished for potential misuse by a hypothetical student.

**Second**, *Ben has been transparent about Eightball, and Emory has endorsed, lauded, and even sponsored its development*. In March 2023, after being featured in an article in the Emory Wheel (Exhibit 2), Ben and his roommate ES1 (sometimes referred to as ES1) entered Eightball in Emory University Business School's "Pitch the Summit" contest. Approximately 15 judges, comprised of Business School students or esteemed Emory University alumnae, awarded Eightball the $10,000 grand prize to fund its further development. Following the award, the Business School promoted Eightball, and Emory faculty supported it. One Emory professor even promoted Eightball from the lectern and used the program to create a study guide for an exam. Marketing a technology that the University encouraged and funded cannot constitute a violation of the Honor Code.

**Third**, *Ben has already been disciplined*. Emory's view of Eightball apparently changed when ES1 linked Eightball to Canvas, allowing students to upload all of their course materials to Eightball at once rather than uploading each document separately—fulfilling a promise that Ben and ES1 had made to the Emory community clearly, unequivocally and repeatedly, including during their oral presentation at the 2023 Pitch the Summit contest. When Ben learned that Emory IT personnel viewed the link as a violation of Emory's policies, he immediately asked ES1 to shut down Eightball on campus, which ES1 did. During an Office of Student Conduct proceeding based on these events, Ben acknowledged that he and ES1 violated—albeit unintentionally—Emory IT rules by empowering students to link Eightball to their individual Canvas accounts. He accepted responsibility, wrote a letter of apology, submitted a research paper, and was placed on disciplinary probation. Ben then was surprised to learn that after accepting his punishment for his work with Eightball, he also was possibly subject to additional discipline from the Honor Council. The Honor Council never acknowledged the Office of Student Conduct's sanctions, and its additional discipline is duplicative, excessive, and unduly restrictive of Ben's academic and career opportunities.

Honor Council Appeal Panel
February 20, 2024
Page 3

As explained below, the Appeal Panel should vacate the sanction because the Honor Council did not adhere to its own policies, leading to an erroneous conclusion and unjust punishment. Specifically, the Honor Code requires that a violation must be based on intentional misconduct that is proven by clear and convincing evidence. But the Honor Council in this matter concluded that Ben committed three violations of the Honor Code without any proof of intent (let alone malicious intent), and in its Deliberation Report, the Honor Council failed to apply—or even mention—the required clear and convincing standard. The Honor Council's errors "could have substantially altered the Honor Council's conclusions," such that all three findings of responsibility must be vacated. Further, the Honor Council's sanctions—which it reached based on an evaluation of negligent rather than intentional conduct and which were unsupported by anything close to clear and convincing evidence—were disproportionate to the circumstances of the purported violations. To the extent that the Honor Council concluded that Ben had intentionally violated the university's IT policies (he did not) and such a conclusion was supported by clear and convincing evidence (it was not), Ben had already admitted to and been punished for those violations in the Office of Student Conduct proceeding, rendering the Honor Council's further discipline for overlapping conduct unjust.

## BACKGROUND

Ben is a junior at Emory University majoring in History and minoring in Economics. Ben applied to Emory early decision and is a top student, the treasurer of the Judo Club, and a regular participant in campus community activities.

In the winter of 2022, Ben was approached by his friend and roommate, [ES1] to discuss [ES1]'s idea for a new start-up company—Eightball. According to [ES1] the goal was to build an artificial intelligence tool to help streamline the process of making flashcards, study guides, practice questions, and the like. Ben was intrigued and agreed to oversee Eightball's marketing. With a team assembled, [ES1] took the reins on developing Eightball's product—the learning material generation tool. [ES1] wrote the first iteration of Eightball's code over winter break. As the 2023 spring semester commenced, [ES1] continued testing and tweaking Eightball's code. Meanwhile, Ben designed website graphics and posted fliers around campus. Ben also made a few social media posts, a responsibility that was generally shared among Eightball's team members. The team advertised Eightball on a number of platforms, including Reddit, Instagram, TikTok, and LinkedIn.

From the beginning, the goal of Eightball was to use novel AI technologies to help students "genuinely learn [their] material." Ex. 2, *Emory Student Entrepreneurs Use AI to Improve Students' Studying Material*, Mar. 1, 2023, at 4. The mission was to "save students' time, enhance the learning process and empower educators." *Id.* at 2. Through the platform, students could submit PDF files of class materials to Eightball's website, and Eightball would then analyze the documents and use artificial intelligence to generate requested learning material. Submitted information was never made available to other users. At all times, Eightball's webpage was public and available for faculty or administrators to view.

Honor Council Appeal Panel
February 20, 2024
Page 4

On March 1, 2023, the *Emory Wheel* published an article covering Eightball's growing success. See *id*. Just a few weeks later, Ben and [ES1] introduced Eightball at Emory's annual "Pitch the Summit" event. See Ex. 3, *Emory Goizueta Entrepreneurship Summit*. Pitch the Summit is a highly competitive forum designed to identify top student entrepreneurs and provide the winning team with "guidance, financial support, and in-kind contributions in order to move the venture forward." *Id*. At this event, Ben and [ES1] pitched Eightball to a panel of judges comprised of Emory business graduate students and esteemed alumnae. Ben and [ES1] won the competition and received the grand prize of $10,000. Ben and [ES1] used the money to further develop Eightball.

Eightball's triumph at Pitch the Summit resulted in further support from the University's administration. Andrea Hershatter, Associate Professor and Senior Associate Dean of the BBA Program in Emory's Goizueta Business School, connected Ben and [ES1] to Emory alumnus Scott Roskind—a seasoned entrepreneur who took interest in Eightball's potential. See Ex. 4, *Evidence Packet, Email from Dean Hershatter,* at 16. Additionally, the business school ran an article covering Ben and [ES1]'s accomplishments. See Ex. 5, *Dorm Room Entrepreneur: BBA Student Co-Founds AI-Powered Study Tool Eightball*, June 28, 2023. Around the same time, professors and teaching assistants also began using Eightball in their classes. See Ex. 4*, Evidence Packet, Eightball Pitchdeck,* at 5. For example, Professor Anna Errore ran an in-class demonstration to show her students how to use Eightball to generate study materials. As far as Ben and [ES1] were aware, Emory University did not just know about Eightball, the community celebrated it and the administration fully endorsed it.

In October 2023, Ben learned that [ES1] recently had followed through on plans, which they had forecast orally, repeatedly and without objection during the Pitch the Summit campaign, for [ES1] to update Eightball's underlying technology to allow users to upload the user's—but no one else's—course materials directly from Canvas, instead of needing to use a manual upload as an intermediate step. Even though this mechanism was newly programmed, it was forecast in the original Pitch the Summit presentation, and the start-up's premise remained the same: to make learning more efficient. As part of [ES1]'s changes to the code, Eightball users were prompted to submit a Canvas token. Concurrent with [ES1]'s changes, Emory's office of Academic Technology Services ("ATS") and the office of Library & Information Technology Services ("LITS") became aware of an unknown application (i.e., Eightball) accessing user tokens on Canvas. Considering the access to be a security risk (although no reasoned basis for that concern was ever articulated), ATS temporarily hid the button that generates Canvas tokens. No one from Emory contacted Ben or [ES1] to explain why the button was removed, so neither Ben nor [ES1] knew or had reason to know that the button's removal had anything to do with Eightball. Thinking the button's disappearance was a system-wide glitch, [ES1] came upon a solution that allowed Canvas users to continue submitting tokens to Eightball. A few days later, on October 31, 2023, ATS discovered the continued use of Canvas tokens and sent [ES1] a notice of potential policy violations. Ben did not receive that email.

Ben was understandably blindsided when he received charges of misconduct concerning Eightball. Ben first received notice of a possible Honor Code violation on November 3, 2023, relating to allegations of cheating. Ex. 6, *Letter From Jason Ciejka* (Nov. 3, 2023). He then

received a separate notice of possible student conduct violation on November 13, 2023, relating to allegations of violating the school's IT policies. Ex. 7, *Email From Sari-Jai Walker* (Nov. 13, 2023). The University did not apprise Ben that these proceedings were distinct. Ben was also surprised by Emory's sudden change of position on Eightball.

Upon receiving notice that Emory suspected him of any wrongdoing, Ben immediately asked ES1 to shut down Eightball at Emory as Ben had neither the authorizations nor technical know-how to do so himself. Ben met with the Office of Student Conduct first. After talking with the Associate Director, Sari-Jai Walker, Ben willingly complied with Student Conduct's recommended course of action. He immediately wrote a letter of apology and published a research paper covering the importance of understanding policy considerations in tech start-ups. See Ex. 8, *Understanding Policy Considerations for Tech Startups, Focused Research and Reflection Paper, Ben Craver* (December 31, 2023). Ben was deeply apologetic for the issues that the Emory IT staff may have experienced, and he accepted responsibility for failing to take "more time to truly understand the [university's] technological policies" with respect to Eightball's Canvas integration. Despite not understanding what technology had changed, Ben admitted his failure to do so, "was an egregiously stupid oversight on my part." Ex. 9, *Apology Letter, Ben Craver*.

Despite Emory's previous support for Eightball and Ben's accepted sanction from the Office of Student Conduct, the Honor Council still proceeded with its own investigation. In early December, Ben and ES1 first met with Blaire Wilson, Senior Associate Director of the Honor Council, who outlined the Honor Council's procedures. Ben and ES1 then met separately with student investigators. Ben's student investigator, Sydney Martin, recommended a full hearing after conferring with faculty advisor Dr. Levi Morran. The full hearing took place on January 18, 2024. At the hearing, Kim Braxton and Anthony Hess of ATS served as witnesses against Ben and ES1 Ben explained that he was not involved with developing the search-engine software. ES1 reiterated that Ben did not contribute to the software, and he explained that any materials that students uploaded to Eightball were stored for each student's personal use and never transmitted further. Ben learned of the hearing's final outcome from Associate Dean Jason Ciejka. See Ex. 10, *Honor Council Outcome Letter* (Jan. 29, 2024). The Honor Council originally called for a one-year suspension. However, Dean Ceijka modified the sanction to a one-semester suspension due to the mitigating fact that this was Ben's first and only infraction. Ex. 11, *Sanction Modification Memo*.

## DISCUSSION

**The Honor Council Failed to Follow the Procedures Published in the Honor Code, and Subsequently Imposed an Unduly Harsh Punishment.**

Section VII of the Honor Code states that an Emory student may appeal an Honor Council decision if: (1) "[t]he Honor Council did not administer the procedures according to its published policies, and it is likely these errors could have substantially altered the decision of the Honor

Honor Council Appeal Panel
February 20, 2024
Page 6

Council;" or (2) "[t]he sanctions were disproportionate to the circumstances of the violation."[1] Ex. 12, *Emory University Academic Honor Code*.

As discussed below, the Honor Council failed to follow the procedures published in the Honor Code, and those failures substantially altered the Honor Council's conclusions that Ben was responsible for three Honor Code violations. First, the Honor Council failed to apply—or even mention anywhere in its decision—the rigorous "clear and convincing evidence" standard that the Honor Code requires. Honor Code, Section V(g). The Honor Council also failed to apply the requirement that an Honor Code violation must be based on Ben's *intentional* misconduct, and instead the Honor Council applied a lesser standard, such as negligence—or at worst recklessness—when it based violations on Ben's failure to anticipate possible intentional Honor Code violations by other students.

Further, the Honor Council and the Dean imposed a punishment that was disproportionate to the circumstances of the purported violations. Ben has never before been accused of academic misconduct, and he had already apologized and been punished by the Office of Student Conduct for his role in the actual but unintentional IT violations. A suspension of any kind and a permanent record of misconduct is far too harsh in light of all of the circumstances.

> **I.    The Honor Council Failed to Apply the Clear and Convincing Evidence Standard of Proof, as Required by the Honor Code.**

Section V(g) of the Honor Code states the following:

> For a finding of an Honor Code violation, the Honor Council must determine by a unanimous vote of the hearing board that there is clear and convincing evidence of a violation. "Clear and convincing" evidence means that a particular fact or set of facts is *substantially* more likely to be true than not true.

(emphasis added). Here, the Honor Council failed to apply this "clear and convincing" standard. Neither the Full Hearing Report nor the Full Hearing Deliberation Report even refer to this standard. The Honor Council's failure to adhere to the required standards is not only a violation of the University's own policies but is a breach of contract under Georgia law. See Ex. 13, *Morehouse Coll., Inc. v. McGaha*, 277 Ga. App. 529, 532 (2005) ("Here, the breach of contract was Morehouse's failure to abide by the hearing procedures in its student handbook, which resulted in McGaha's expulsion."). And as detailed below, the Honor Council's failure to apply the required clear and convincing standard of proof led to the Honor Council's erroneous conclusions that Ben was responsible for three Honor Code violations, each of which is discussed in turn below.

---

[1] The Honor Code also provides that an appeal can be based on new evidence, under limited circumstances.

Honor Council Appeal Panel
February 20, 2024
Page 7

> **A. There was not clear and convincing evidence, as required by the Honor Code, that Ben committed any action or inaction which was offensive to the integrity and honesty of the members of the academic community.**

If the Honor Council had evaluated the evidence using the required clear and convincing standard of proof, then it would have recognized that the evidence fell far short of proving that Ben "committed any action or inaction which was offensive to the integrity and honesty of the members of the academic community." Ex. 14, *Honor Council Full Hearing Report* at 6. Contrary to the Honor Council's conclusions, the evidence presented at the hearing proved overwhelmingly that the Emory University Community was not offended by Ben's actions or inactions, but instead the Emory University Community has, from the outset, celebrated, encouraged, and funded the development of Eightball. Specifically:

- March 1, 2023, the Wheel published an article describing Eightball's "flashcard feature" while noting that it planned to also create practice tests and answer keys and include a "homework helper." Ex. 4, *Evidence Packet* at 26.

- March 2023, the Emory University – Goizueta Business School's official Twitter account lauded Eightball as "a website that uses the power of AI to make studying more efficient and easier." Ex. 4, *Evidence Packet* at 18.

- March 10, 2023, Professor Anna Errore wrote to the Eightball team, "I was very pleased to hear about your startup, Eightball. I congratulate you for your entrepreneurial attitude and for the very interesting idea that you your business partners had." Ex. 15, *Email from Anna Errore* (Mar. 10, 2023).

- March 31, 2023, Ben presented Eightball at Emory's Pitch the Summit and won the $10,000 grand prize with the intention that the money be used to further the product's development. The presentation included reference to the planned "check your answer" tool. Ex. 4, *Evidence Packet* at 7.

- June 2, 2023, Senior Associate Dean of Goizueta Business School Andrea Hershatter wrote to Ben that she "hoped [he was] finding time and resources to continue [his] work on Eightball," she was "excited to hear about [his] progress … and to support [his] endeavor," and to "make an introduction" to an Emory alumnus for advice. Ex. 4, *Evidence Packet* at 10.

- October 4, 2023, Computer Science Professor Jinho Choi told ES1 that Eightball's website "looks great." Ex. 16, *Email from Jinho Choi* (Oct. 4, 2023).

- October 28, 2023, days before Ben was notified of a potential violation of the Honor Code—Ben reached out to professors and informed them that "students in your … class are using Eightball for their homework assignments and studying." Ex. 17, *Email from Ben Craver* (Oct. 28, 2023).

- February 1, 2024, less than three weeks ago, Emory Entrepreneurship & Venture Management invited Ben to dinner to discuss making Eightball the accelerator's first grant recipient of the year. Ex. 18, *Email from B. Fargnoli* (Feb. 1, 2024).

- February 20, 2024, distinguished Emory alumna Vanessa Youshaei, who was one of the Pitch the Summit judges who voted to award Eightball the grand prize, wrote to Ben regarding this appeal:: "You have my full support, and I'd be happy to talk to the dean if needed. As someone with a reading disability, I wish I had something like Eightball to make my school years less challenging, so I definitely believe AI can be used for good when that is the intention. I wish you all the best in this journey and hope you can successfully appeal the decision. Ex. 19, *Message from Vanessa Youshaei*.

At no point among the praise did faculty, administrators, or other Emory students give Ben any notice that Eightball could possibly be against the Honor Code, which permits the use of artificial intelligence with proper citations, unless faculty expressly prohibit it. Honor Code Appendix IV. And when Ben first received a notice that Eightball "may have violated" the Code, he immediately asked [ES1] to shut it down.[2] If Ben is responsible for violating the Honor Code, then surely everyone who encouraged Eightball—faculty and administrators alike—are responsible, too. In short, Ben should not be punished when he had no notice that he was doing anything wrong in the first place. The Honor Council's failure to require clear and convincing evidence was not harmless because the Honor Council could not have reasonably concluded that there was any violation under the appropriate standard of proof.

> **B. There was not clear and convincing evidence, as required by the Honor Code, that Ben intentionally helped or attempted to help another person violate any provision of the Honor Code or the academic integrity policy at another education institution.**

If the Honor Council had evaluated the evidence using the required clear and convincing standard of proof, it would have recognized that the evidence fell far short of proving that Ben "intentionally helped or attempted to help another person violate any provision of the Honor Code or the academic integrity policy at another education institution." Ex. 14, *Honor Council Full Hearing Report* at 5.

First, the Honor Council concluded—again, without referring to or applying the required clear and convincing evidence standard—that Ben "intentionally helped or attempted to help

---

[2] Ben maintains that he has never committed an intentional violation of the Honor Code of Emory or the Honor Code of the many other universities where Eightball continues to be used by students and professors. However, following the Honor Council's decision in this case, out of an abundance of caution and desire to comply with the Honor Council's decision until his appeal was heard and more thoroughly reasoned guidance was given, Ben has asked [ES1] who controls the Eightball platform—to shut down Eightball at all other universities as well. To Ben's knowledge, the administration, professors and IT staff at those universities have never expressed concerns that Eightball violates their institutions' Honor Code equivalents.

another person violate any provision of the Honor Code or the academic integrity policy at another education institution," and the evidence supporting that conclusion included that "he chose to continue helping the development of Eightball while being aware that Eightball *could be used for cheating*." Ex. 14, *Honor Council Full Hearing Report* at 6. But there was no evidence—let alone clear and convincing evidence—(1) that Ben *intended* for anyone to use Eightball to cheat or otherwise violate the Honor Code of Emory or any other educational institution, or (2) that a single person *ever* used or even attempted to use Eightball to cheat or otherwise violate the Honor Code of Emory or any other educational institution. Further, an Emory University Honor Code violation must be predicated on clear and convincing evidence of Ben's unscrupulous intent, not speculation about another user's *potential* misuse of Eightball. Even if the Honor Council were correct and Ben knew that there was a possibility that "Eightball could be used for cheating," that is altogether different from a finding that Ben "intentionally helped or attempted to help" another person violate the Honor Code. The evidence does not support a finding of responsibility under the proper and rigorous clear and convincing standard of proof.

Second, in its Full Deliberation Report, the Honor Council stated that "the development of Eightball is based on a blueprint which incorporates the ability to cheat, which means that they were aware of Eightball's capacity and built it with intent." Ex. 14, *Honor Council Full Hearing Report* at 5. Again failing to mention or apply the clear and convincing evidence standard, the Honor Council cited as evidence the disclosures that Ben and ES1 included in the PowerPoint presentation that won them the $10,000 grand prize at the March 2023 "Pitch the Summit." Ex. 14, *Honor Council Full Hearing Report* at 5. ("the slides ES1 used for the pitch competition clearly showed that 'check your answer' is part of Eightball's functions, proving that such capability was in Eightball's blueprint in the first place.") This is puzzling logic and analysis. Approximately 15 judges—a mix of well-respected Emory alumnae and graduate business students—saw and heard Ben's and ES1 's PowerPoint presentation, including their disclosure that Eightball would include a "check your answer" function. But unlike the Honor Council, the judges' conclusion was not that Eightball was a corrupt tool intended to promote cheating, but rather an ingenious learning aid worthy of the Summit's $10,000 grand prize. These facts do not imply an intent to cheat or help others to cheat. The Honor Council never explained how a "check your answer" function—a learning tool commonly found in almost every textbook available today—was a "blueprint" that "incorporate[d] the ability to cheat." Again, the Honor Council failed to apply the necessary clear and convincing standard, prejudicing the proceeding against Ben from the outset.

Further, the witness testimony given at the Honor Council hearing is incapable of supporting a finding of responsibility under the proper clear and convincing standard. There were only two witnesses called during the hearing: Kim Braxton and Anthony Hess from the Office of Information Technology Services. Their expertise and testimony was limited to a discussion of Eightball's technical integration with Canvas, and they were clearly motivated by their limited experience with Eightball which, unbeknownst to Ben at the time, had regrettably created additional work for IT staff. While the witnesses expressed vague concerns about the potential for cheating, these IT representatives had no firsthand knowledge or expertise related to such matters, rendering their apparent concerns mere speculation. These witnesses also had a very limited understanding of Eightball and its history. Emory has a separate code of conduct covering IT

matters under which Ben has already been disciplined, despite having no part in or knowledge of Eightball's technological workings.

Although the Honor Council considered additional evidence from several Reddit posts, this evidence also could not have supported the Honor Council's final conclusion. To start, Ben did not write or even know about the Reddit posts for which the Honor Council disciplined him. With regard to the media efforts that Ben did control, those advertisements do not support a finding of intent by clear and convincing evidence. With the benefit of hindsight, Ben could have perhaps chosen more careful language to describe Eightball as a product. For instance, Eightball could have been better compared to assistance from a tutor or teaching assistant than a source of homework solutions. Even so, Ben always had good and honest intentions, and a few unartful social media posts do not suggest otherwise.

In its Full Hearing Report, the Honor Council summarized certain of Ben's statements, including that, "he was shocked when they faced a charge of violating the Honor Code because he believed that it was basically impossible for someone to violate the Honor Code with Eightball. Ben felt that it was only a search engine and therefore could not provide people any homework answers." Ex. 14, *Honor Council Full Hearing Report* at 3. This summary from the Honor Council, while well meaning, is emblematic of the misunderstanding that resulted in Ben going from grand prize winner of the Pitch the Summit contest to a 6-month suspension from the university, all for the same conduct. Ben reiterated before the Honor Council that he never intended the tool to be used to cheat. Ben did not and does not think that it would be impossible for someone to use Eightball to cheat—just as someone with nefarious intentions *could* use Google or a calculator to cheat—but again, he never intended to facilitate that behavior. Similarly, Ben knew then and knows now that Eightball could "provide homework answers," but just as he and ES1 conveyed during the Pitch the Summit contest and in an interview with The Emory Wheel, "Our goal is not to solve your homework, it's to be the companion, to be that tool next to you. It is not that tool, like Chegg, or like any of these other services that simply spits out the answer. *It is a tool that is going to help you genuinely learn your material*." Ex. 2, *Emory Wheel Article*, at 4 (Emphasis added.)

The Honor Council's other reasons for concluding that Ben's conduct was offensive to the integrity of the Emory community, or that he intentionally helped students at other universities to violate their schools' codes, are meritless. None of the evidence supports that Ben intended that tool to be used nefariously. The Honor Council's out-of-context reference to Eightball's citation to Chegg as evidence of Ben's intent to facilitate cheating is similarly not clear or convincing. Chegg is a successful, publicly traded company that is widely regarded as an industry leader in education technology. Eightball cited Chegg and Quizlet in a single slide of its pitch deck for the narrow purpose of showing possible pricing models for third-party learning tools. Given the limited universe of education technology start-ups, citation to these specific companies does not demonstrate that Ben intended for other students to use Eightball to cheat.

      **C. There was not clear and convincing evidence, as required by the Honor Code, that Ben disseminated any course materials, including class recordings, without instructor permission.**

The record similarly lacks clear and convincing evidence that Ben "disseminated any course materials, including recording the class, without the permission of the instructor." Ex. 14, *Honor Council Full Hearing Report* at 5. When analyzing the evidence in support of this allegation, the Honor Council found only that Ben was "clearly aware that the API token could allow Eightball to access user's [sic] Canvas and their access was not authorized[.]" Ex. 14, *Honor Council Full Hearing Report* at 6. But the Honor Council had no evidence—let alone clear and convincing evidence—that Ben knew that his actions or any users' actions were unauthorized in any way. Rather, the evidence demonstrated that on numerous occasions, Ben and [ES1] disclosed to the Emory University community, including computer science instructors, that the plan was for Eightball users to link their Canvas accounts. Notably, as part of their award-winning "Pitch the Summit" presentation in March 2023, Ben and [ES1] emphasized their intent to develop Eightball so that Canvas users would have the opportunity to link their course material to Eightball—a feature that would allow users to generate course-specific answers to questions, flashcards, and study guides. Ex. 4, *Evidence Packet* at 7 and 12. When presented with this pitch, the Emory University community showered the proposal with praise and funded its development with the $10,000 grand prize. Ben's and [ES1]'s early and consistent disclosure to the Emory University community that users would link Eightball to their Canvas accounts is inconsistent with the Honor Council's conclusion that Ben knew that users linking Eightball to their Canvas accounts was "unauthorized."

Further, it is undisputed that Ben and [ES1] shut down Eightball on November 3, 2023, shortly after IT staff issued a complaint to [ES1] (and not Ben). Indeed, the evidence demonstrates that Ben focused all of his efforts on marketing Eightball and did not receive any communications from the university's IT staff regarding their concerns about users linking their Canvas accounts to Eightball. Even if he had received such concerns, Ben has neither the knowledge nor permissions to link the website to Canvas or to shut it down. In short, the Honor Council improperly imputed [ES1]'s knowledge and actions regarding Canvas to Ben.

The finding that Ben was responsible for disseminating course materials was rooted in a misconception of how Eightball operates. The Council reasoned that "the unauthorized access to course materials is essentially a dissemination of user's information," but Eightball did not transmit inputs anywhere beyond the user's account. As Ben understands (and [ES1] explained at the hearing), a student uploading information or connecting a Canvas account to Eightball's private server is akin to a student typing up notes and saving them on a private OneDrive, GoogleDrive, or any other third-party cloud. Such activity is certainly not "dissemination" by any stretch of the imagination. Unlike a product like ChatGPT, Eightball operates in a closed environment and on an individualized basis. No course materials or student information is shared with, or accessible to, other students. The IT staff's alleged concern with any such dissemination was entirely unfounded and was directly contradicted with hearing evidence. Because Ben did not have the knowledge or intent required to trigger a violation of this section of the Honor Code, the Honor Council's determination cannot stand.

**II.     The Imposed Sanctions Were Disproportionate to the Circumstances.**

Even if the appeal board affirms the Honor Council's determination that Ben is responsible for violating the Honor Code, we ask that the Appeal Board negate Ben's one-semester suspension. As stated in Emory's "Information about Honor Council Sanctions," "[t]he typical sanction for a first violation of the Emory College Honor Code is . . . a 1-year Honor Code probation and mandatory completion of an educational program." Ex. 20, *Information about Honor Council Sanctions*. Generally, suspensions are only considered for repeat offenders. Ben is a good person and kind student. If the Council's findings are upheld, then this would be Ben's first and only offense of any sort. He has ceased operating Eightball at Emory, sought to stop its use at other schools, and has taken full responsibility for his role in violating Emory's IT policies. See Ex. 9, *Apology Letter* ("I am writing to express my sincerest apologies for the recent incident involving violations of Emory information technology policies. I fully understand the inappropriateness of my behavior…."). While Ben maintains that Eightball was never intended to facilitate cheating, he nevertheless submitted a 10-page research paper in which he accepted responsibility for any harm he may have caused the school. His marketing role in creating what he (and many Emory professors and esteemed alumnae) understood to be a cutting edge study tool does not warrant a suspension that is reserved for repeat-offenders and particularly "serious or egregious" circumstances.

Relatedly, questions surrounding artificial intelligence are novel and warrant especially careful consideration before harsh punishments are imposed on students attempting to use new technologies to develop innovative learning tools aimed at improving educational outcomes. National conversation continues over the place of artificial intelligence in higher education. See Ex. 21, *Ban or Embrace? Colleges Wrestle With A.I.-Generated Admissions Essays*, Natasha Singer, N.Y. Times (Sept. 1, 2023); Ex. 22, *Great promise but potential for peril*, Christina Pazzanese, The Harvard Gazette (Oct. 26, 2020). Emory, however, permits students to use the technology with proper citations and subject to each professor's disallowance. Imposing a life-altering sanction on a student who simply tried to implement this technology in ways that Emory itself encouraged is unwarranted and without precedent.

The Honor Council's discipline imposed on Ben is especially harsh in light of the Office of Student Conduct's punishment based on the same events. After its investigation, the Office of Student Conduct put Ben on probation and required him to write an apology letter and a reflection paper, both of which Ben did sincerely and with the understanding that this punishment would resolve all concerns relating to Eightball. See Ex. 23, *Office of Student Conduct Outcome Form*. The Honor Council's call for a suspension is a second punishment for the same conduct—and a punishment that is noticeably incongruent with the Office of Student Conduct. If Ben had known or suspected that this separate investigation could impose an additive penalty, he could have better defended himself from the start. Most importantly, though, the solicitation of both a written apology and admissions in the Office of Student Conduct proceedings rendered the subsequent Honor Council proceedings unfair and biased, in violation of the Honor Code's requirement that "students have a right to a fair and impartial process." Honor Code Section VII(3).

Honor Council Appeal Panel
February 20, 2024
Page 13

Also significant is that the record is devoid of any indication that Ben's involvement actually harmed Emory's academic integrity. The Honor Council found (without evidence) that Eightball "*could* be used for cheating," but there is no testimony or other evidence whatsoever that anyone actually cheated using Eightball. Ben himself was cleared of all allegations related to cheating on academic assignments. The lack of actual harm is an important factor that weighs toward a less severe sanction, and the Honor Council never considered it.

The consequences of the suspension in Ben's case also are uniquely severe. Most immediately, Ben has been accepted to the History Honors program for the fall of 2024. He is scheduled to begin working on an honor's thesis under the wing of Professor Maria Montalvo, and he hopes to write his thesis about England's role in the Civil War. But if he is suspended, he will miss out on his opportunity to research and participate in this prestigious experience. He also is planning to apply to law school, and a semester suspension may prohibit his admission to law school or to a state bar in the future. He would also miss out on a semester of irreplaceable memories with his classmates and would not be able to lead the Judo Club. The consequences of the imposed suspension are significant and will last well into the future.

In the time since the hearing, Ben continues to thrive in the Emory community. Ben anticipates returning to campus for his senior year, completing his honors thesis, and making the most out of his final semesters before exploring graduate school.

## CONCLUSION

For all of these reasons, we respectfully request that the Appeal Panel vacate the sanction. In the event the Panel does not vacate the sanction, we request that the Panel remand the case to the Honor Council for a new hearing at which the Council may evaluate the evidence using the required clear and convincing evidence standard.

Sincerely yours,

| | | |
|---|---|---|
| Christopher E. Adams | Professor Ronald S. Sullivan | Craig C. Martin |
| Krevolin Horst | Jesse Climenko Clinical | Willkie Farr & Gallagher |
| One Atlantic Center | Professor of Law | LLP |
| 1201 West Peachtree Street, NW | Harvard Law School | 300 North LaSalle Drive |
| Suite 3250 | 1585 Massachusetts Ave. | Chicago, IL 60654 |
| Atlanta, GA 30309 | Cambridge, MA 02138 | cmartin@willkie.com |
| adams@khlawfirm.com | rsullivan@law.harvard.edu | |

cc:     Ben Craver